Jeffrey SCHARAGA, Robert Scharaga and Teaseures Promotions, Ltd., Plaintiffs,

v.

The CITY OF NEW YORK, Frederick A. O. Schwarz, Jr., individually and as Corporation Counsel of the City of New York, Carl B. Weisbrod, individually and as Director of the Mayor's Office of Midtown Enforcement, William H. Daly, individually and as Deputy Director of the Mayor's Office of Midtown Enforcement, and The Honorable Hortense Gabel, Defendants.

No. 82 Civ. 3531 (WK).

United States District Court, S. D. New York.

July 8, 1982.

Lichtenberg & Goss, P. C. by Murray Lichtenberg, Steven R. Sutton, Daniel A. Fried, New York City, for plaintiffs.

Frederick A. O. Schwarz, Jr., Corp. Counsel of the City of New York by John W. Russell, New York City, for defendants.

Robert Abrams, Atty. Gen. of the State of New York by Jeffrey I. Slonim, Asst. Atty. Gen., New York City, for defendant Hortense Gabel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiff brings this action for injunction and damages against the City of New York, its corporation counsel, various of its enforcement agencies, and the Honorable Hortense Gabel, a Justice of the New York Supreme Court. Plaintiffs' basic complaint is that Justice Gabel—at the behest of the other defendants—committed errors of constitutional magnitude in granting a preliminary injunction which had the effect of closing down plaintiffs' business activities. The case is before us on plaintiffs' motion for injunctive relief. Defendants' cross-move to dismiss the complaint.

### Background

Plaintiffs own and operate an establishment called "The Retreat" located at 219 East 46 Street in Manhattan. The business of The Retreat is succinctly described in paragraph 4 of the affidavit of Robert Scharaga offered in support of plaintiffs' motion for federal relief against the state action, as follows:

> The business of The Retreat is the displaying, selling and previewing of video casette tapes of all ratings... For the most part, those tapes are of first-run, popular movies. The Retreat's original business was as a bathing establishment; saunas, whirlpools and showers are still available to the patrons.

For reasons not altogether clear, the merchandising of "first-run, popular movies" requires the assistance of various female "attendants." However, these attendants are not in the employ of the plaintiffs, but act as "independent contractors." Scharaga affidavit ¶ 16. No employer-employee relationship existing, the plaintiffs do not, of course, control the conduct of their independent contractors. Perhaps to compensate for this lack of control, and to guard

against any improper sexual advances by the female attendants, the plaintiffs placed on their premises "appropriate warnings against such conduct." *Id.* ¶ 22. That is to say, "[a] large sign is kept posted in the attendants' locker room which clearly prohibits solicitation of sexual acts." *Id.* ¶ 16.

Despite (or perhaps because of) these warnings, the City's enforcement agencies suspected that the premises were being used for prostitution, and on March 3, 1982 directed several police officers to visit in search of evidence to support such suspicions. The results of these investigatory visits were the subject of conflicting affidavits before Justice Gabel on the City's motion for temporary injunction. It is not necessary to review these affidavits in detail. Suffice it to say that it is common ground that the police officers disrobed, took showers, and then engaged in conversation of a rather intimate nature with the attendants. There is no question but that the possibility of sexual conduct was discussed in these conversations. However, it is crucial under New York law to determine which party to such a conversation first actually suggests a sexual act (whether conventional or unconventional), and this issue was in dispute as to each of the conversations. Plaintiffs' papers in opposition to the motion for preliminary injunction in state court suggested that the resolution of this issue required live testimony. However—as was conceded in oral argument on the motion before us—plaintiffs' counsel made no request for a hearing when the case was called before Justice Gabel, but proceeded to argue the merits on the basis of the affidavits submitted. Justice Gabel resolved the factual disputes in the City's favor with respect to a sufficient number of conversations to warrant granting a preliminary injunction.

After Justice Gabel had announced her decision, the City submitted a proposed order which provided for a full evidentiary hearing within three days, as required by the Nuisance Abatement Law. Justice Gabel, however, struck that provision from the order before she signed it. It was also conceded in oral argument on the motion before us that plaintiffs never requested Justice Gabel to reinstate that provision.

### Discussion

■ As we understand it, plaintiffs contend: (a) that—although the lawyer representing them before Justice Gabel made no request for an evidentiary hearing but was content to argue the matter on the merits on the basis of affidavits—Justice Gabel committed error of constitutional magnitude in granting the preliminary injunction without submitting the police officers to full-blown cross-examination; and (b) that—although they never requested Justice Gabel to restore to her order the provision for a prompt trial—she committed constitutional error in eliminating it.

We think the mere statement of the plaintiffs' positions is adequate to answer them.

■ Nor is there any merit in any of plaintiffs' other contentions. With respect to the claim that the relief granted was constitutionally overbroad, Justice Gabel had ample justification to conclude that plaintiffs' claimed legitimate activities were mere subterfuges. The contention that the methods employed by the police officers were so unreliable as to be constitutionally impermissible is frivolous. *Cf., e.g., United States v. Brown* (2d Cir. 1979) 602 F.2d 1073, *reversing* (S.D.N.Y.1978) 462 F.Supp. 184 (Knapp, J.).

■ We therefore dismiss the complaint for failure to state a claim.[1] Let the Clerk enter judgment dismissing the complaint as to all defendants.

SO ORDERED.

---

1. It may be argued that, in light of *Younger v. Harris* (1971) 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, we should abstain rather than consider the merits of plaintiffs' claims. We do not feel so constrained by Younger. It was the Supreme Court's purpose in that case to protect states from undue interference by the federal judiciary. There is nothing in the decision to suggest that a federal court should not protect itself by summarily and finally disposing of frivolous litigation.